IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRIS BATTLE,

    Plaintiff,                  No. CIV S-03-0852 LKK DAD P

    vs.

D.L. RUNNELS, et al.,

    Defendants.            <u>FINDINGS AND RECOMMENDATIONS</u>

/

        Plaintiff is a state prisoner proceeding pro se with this civil rights action. Before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff has filed opposition to the motion, and defendants have filed a reply.

BACKGROUND

        Plaintiff commenced this action on April 25, 2003. By order filed May 1, 2003, the court determined that plaintiff's complaint appears to state cognizable claims for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b). The complaint was served on defendants R.E. Ingwerson, R. Perry, and G.C. Martin, who filed their answer on September 9, 2003. On December 10, 2003, plaintiff's claims against defendant R. Baillie were dismissed for failure to effect service on the defendant.

/////

Plaintiff alleges that he was subjected to excessive force during an incident that occurred at High Desert State Prison in 2001. Plaintiff alleges that Correctional Officer Martin and another officer were pulling, lifting and dragging him, while his hands were handcuffed behind his back. Plaintiff admits that he refused to move but alleges that Sergeant Perry "came up from behind me and slammed me to the ground and started kicking, punching and knee-ing me all over my body" and that Correctional Officer Martin "did the same as Sgt. Perry." Plaintiff alleges that Lieutenant Ingwerson watched the assault and lied in her report. Plaintiff seeks compensatory damages and transfer to another prison for his safety.

Pursuant to the scheduling order filed in this action on May 6, 2004, discovery was scheduled to close on September 3, 2004. The court considered plaintiff's untimely discovery motion on its merits and denied the motion on November 15, 2004. The time for filing non-discovery pretrial motions expired on October 29, 2004. Defendants' timely motion for summary judgment is before the court. The dates set for pretrial conference and jury trial have been vacated.

## STANDARDS FOR SUMMARY JUDGMENT UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> The moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.

1  Summary judgment should be entered, after adequate time for discovery and upon
2  motion, against a party who fails to make a showing sufficient to establish the existence of an
3  element essential to that party's case and on which that party will bear the burden of proof at
4  trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the
5  nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment
6  should be granted, "so long as whatever is before the district court demonstrates that the standard
7  for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

8  If the moving party meets its initial responsibility, the burden shifts to the
9  opposing party to establish that a genuine issue as to any material fact does exist. See Matsushita
10 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
11 existence of this factual dispute, the opposing party may not rely upon the allegations or denials
12 of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or
13 admissible discovery material in support of the contention that a dispute exists. See Fed. R. Civ.
14 P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in
15 contention is material, i.e., a fact that might affect the outcome of the suit under the governing
16 law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a
17 verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
18 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987);
19 Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

20 With regard to the required showing that a factual dispute is genuine, it is
21 important to note that a scintilla of evidence or evidence that is merely colorable or not
22 significantly probative does not present a genuine issue of material fact precluding summary
23 judgment. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000); see also Summers
24 v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

25 In trying to establish the existence of a factual dispute, the opposing party need
26 not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed

Case 2:03-cv-00852-LKK-DAD   Document 67   Filed 07/25/05   Page 4 of 13

factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.

Inferences will not be drawn out of the air, however, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

By order filed June 30, 2003, the pro se plaintiff was advised of the requirements for opposing a defendant's motion for summary judgment pursuant to Rule 56. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

THE PARTIES' ARGUMENTS AND EVIDENCE

Defendants argue that force was applied in good faith and that the force applied was not malicious or sadistic, was de minimis, and did not constitute excessive force. Defendants assert that they are entitled to qualified immunity on the ground that, if their use of force is categorized as excessive, the force was objectively reasonable because it was the amount of force necessary to subdue an uncooperative inmate who refused a transfer and became a security threat. Defendants assert that plaintiff was provided due process during his disciplinary hearing, which resulted in loss of good time credits, and that they are therefore entitled to

4

summary judgment on plaintiff's allegation that reports were falsified by the defendants. Finally, defendants contend that any state law claims alleged by plaintiff should be dismissed if summary judgment is granted on all of his federal claims.

Defendants offer a statement of undisputed facts supported by the declarations of defendants Perry, Martin, and Ingwerson, plaintiff's deposition testimony, prison reports and disciplinary records related to the incident, and plaintiff's medical records. Defendants' evidence establishes that plaintiff was confined at High Desert State Prison on November 8, 2001, and that G. Martin, Sr. was a correctional officer, R. Perry was a correctional sergeant, and P. Ingwerson was a correctional lieutenant.

Defendants' evidence establishes the following facts concerning the incident on November 8, 2001: at approximately 9:00 p.m., plaintiff was waiting outside the C-facility program office for transfer from C-facility to B-facility because of his altercations with other inmates; plaintiff had engaged in a fist fight with another inmate about five hours earlier; approximately twelve inmates were waiting for transfer to B-facility; plaintiff initially objected to the transfer but then told Sgt. Perry he would go to B-facility if he were allowed to see his personal property first; plaintiff's property was brought from his cell and he was allowed to leave the holding cage to inspect his property; plaintiff then refused to be transferred; he challenged the officers and told them they would have to "kick [his] ass" because he was not going to B-yard; Sgt. Perry instructed plaintiff to "cuff up," and plaintiff complied; Officers Martin and Bailee held plaintiff's arms while attempting to escort plaintiff towards the C-facility sallyport gate; plaintiff started to move in that direction but then stopped; after plaintiff refused to move, Officers Martin and Bailee attempted to pull him towards the gate; plaintiff continued to resist, and the two officers lifted him up and tried to pull him forward; plaintiff pulled his arms down and planted his feet on the ground, refusing to move; the officers ordered plaintiff to comply with the escort, but he refused; Sgt. Perry walked up behind plaintiff, took hold of plaintiff's hands, and requested that plaintiff comply with the escort; plaintiff continued to resist; when plaintiff

5

refused to comply with Sgt. Perry's order, Sgt. Perry instructed the two officers to place plaintiff on the ground; the officers placed plaintiff on the ground, face down, on his chest; Sgt. Perry straddled plaintiff's back, placed his knee on plaintiff's right side and his hands on plaintiff's neck; Officer Martin landed near plaintiff's legs and secured them; an officer requested leg irons, and when the leg irons were brought, they were placed on plaintiff's legs; Lt. Ingwerson did not touch plaintiff; after plaintiff was placed in leg irons, Officers Martin and Bailee lifted him off the ground and escorted him to the C-facility medical office; plaintiff was placed in a holding cell, where he began banging his head against the medical office window; he banged his head against the window five or six times; MTA Gillette entered the holding cell and cleaned plaintiff's face; plaintiff complained of wrist pain and of two abrasions on his right cheek and one near his left cheek; medical records reflect that plaintiff's injuries consisted of a three-centimeter abrasion on the right side of his face around the cheek area, a minor scrape 1.5 centimeters long a little above his cheek area on the right side of his face, and a minor scrape one centimeter long at the top of the cheek bone area on the left side of his face; Sgt. Perry sustained small abrasions to his knees and the fifth digit of his left hand; after plaintiff was treated at the C-facility medical office, he was taken to the central medical office, where he was treated and released to administrative segregation for 30 days, after which he was transferred to B-facility; plaintiff was issued a rules violation report for resisting a peace officer requiring the use of force; plaintiff was provided with notice of the hearing, a staff assistant, an investigative employee, and the opportunity to present evidence and witness statements, and he received written findings after the hearing; plaintiff was found guilty of failure to obey an officer and was assessed 90 days loss of time credits.

    Defendants argue that an inmate who becomes aggressive presents a serious risk to the security of the institution, staff, and other inmates and that the situation initiated by the plaintiff in this case could have turned into a riot because other inmates were present, inmates often become agitated by the action of another inmate, and things can get out of control quickly.

The three defendants contend that they acted as they did because it was necessary in order to maintain discipline and restore order, which was lost when plaintiff began resisting escort to another facility. Defendants assert that they did not use excessive force or take any sadistic or malicious action against plaintiff. Defendants point to plaintiff's testimony that Officer Martin did not use excessive force on him and only held his legs during the incident and plaintiff's admission that the force used to place him on the ground after he refused to comply with orders was within departmental policy.

In opposition to defendants' motion, plaintiff has submitted two documents. The first document is a memorandum of points and authorities in which plaintiff contends that defendants' motion is premature. Plaintiff offers three points in support of his contention. First, he asserts that a court should not grant summary judgment against a party who has not had an opportunity to pursue discovery or whose discovery requests have not been answered. Plaintiff states that he is still pursuing discovery and wants to file an amended complaint concerning fabricated documents. Second, plaintiff asserts a desire to amend his complaint to allege conspiracy claims. He argues that he was found guilty of a rules violation because the defendants conspired to conceal their misconduct by falsifying reports. Plaintiff also claims that "several" of the defendants have been sued in another civil rights case in which there are allegations of excessive force, assault and battery, and deliberate indifference to a serious medical need. Third, plaintiff reiterates that there are relevant facts yet to be discovered. He cites his motion to compel.

Plaintiff's second document is a declaration in which he refers to his motion to compel, asserts that defendants' failure to respond to discovery requests hindered him from filing an amended complaint, states that he has spoken to an inmate who has declarations from other inmates that would support the claims in plaintiff's current complaint, disavows any intent to delay this action, and explains that another inmate has caused him to see "the errors of [his] complaint" and his manner of litigating this case thus far.

Plaintiff has not reproduced the facts contained in defendants' statement of undisputed facts and admitted the facts that are undisputed and denied those that are disputed, as required by Local Rule 56-260(b). Nor has plaintiff offered a separate statement of disputed facts, as permitted by Local Rule 56-260(b).

In reply to plaintiff's documents, defendants observe that plaintiff has not demonstrated the existence of any material dispute. In response to plaintiff's first point, defendants describe the Rule 56(f) argument as vague and ambiguous and assert that the argument lacks merit both factually and legally. Defendants cite the fact that plaintiff's motion to compel was denied on November 15, 2004, and the court found that plaintiff had failed to demonstrate that the documentation he seeks is relevant to the claims alleged in his complaint. Defendants also assert that plaintiff procedurally defaulted his Rule 56(f) argument by failing to file an affidavit stating the reasons he is unable to oppose summary judgment and identifying the basis for his need for further discovery. Defendants observe that plaintiff's vague and unsupported hope of discovering unknown facts through additional discovery falls far short of the requirements of Rule 56(f).

In response to plaintiff's second point, defendants note that plaintiff has not sought leave to amend his complaint, has not presented a proposed amended complaint, and has not provided a factual or legal basis for amending. Defendants contend that plaintiff's request for denial of summary judgment based on mere desire to amend is lacking in merit factually and legally. Defendants further contend that plaintiff should not be permitted to seek leave to amend for the purpose of thwarting their motion for summary judgment.

In response to plaintiff's third point, defendants assert that plaintiff has provided little or no argument addressing the merits of their motion. Defendants conclude that, in the absence of any evidence of a dispute as to any material fact, plaintiff has not met his burden and their motion for summary judgment should be granted.

/////

ANALYSIS

I. <u>Standards Applicable to Plaintiff's Claims</u>

Section 1983 provides that "[e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured." 42 U.S.C. § 1983. To prevail on a claim under this statute, the plaintiff must prove two essential elements: (1) he was deprived of a right secured by the constitution or laws of the United States and (2) the alleged deprivation was committed by a person acting under color of state law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

The Eighth Amendment imposes on prison officials a duty to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984). "'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) (quoting <u>Ingraham v. Wright</u>, 430 U.S. 651, 670 (1977)); <u>see also</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." <u>Whitley</u>, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992) (citing <u>Whitley</u>, 475 U.S. at 320). The plaintiff must show that objectively he suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298-99 (1991).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)

(quoting Estelle, 429 U.S. at 103). The objective prong of the test requires the court to consider whether the alleged wrongdoing was harmful enough to establish a constitutional violation. Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. In the excessive force context, however, the objective prong does not require a prisoner to show a "significant injury" in order to establish that he suffered a sufficiently serious constitutional deprivation. 503 U.S. at 9-10.

The subjective prong of the two-part test is also contextual. Wilson, 501 U.S. at 299. A prison official acts with the requisite "culpable mind" for an excessive force claim if he acts maliciously and sadistically for the purpose of causing harm. Whitley, 475 U.S. at 320-21. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7.

The appropriateness of any use of force must be determined by the facts and circumstances of each case. Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988). The reasonableness of the amount of force used is usually a question of fact to be determined by the jury. Barlow v. Ground, 943 F.2d 1132, 1135-36 (9th Cir. 1991); Robins v. Harum, 773 F.2d 1004, 1010 (9th Cir. 1985). Summary judgment may be granted, however, where there is no evidence that excessive force was used or that the force used was more than de minimis. Hudson, 503 U.S. at 9-10 (holding that de minimis use of physical force by prison guards is excluded from Eighth Amendment's prohibition of excessive force); White v. Pierce County, 797 F.2d 812, 816 (9th Cir. 1986) (affirming grant of summary judgment where there was no indication that deputies used more force than necessary to subdue plaintiff). See also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable

person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (per curiam) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The threshold question for a court required to rule on the qualified immunity issue is whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendants' conduct violated a statutory or constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no such right would have been violated were the plaintiff's allegations established, "there is no necessity for further inquiries concerning qualified immunity."  Id.  If, on the other hand, a statutory or constitutional right is established by the plaintiff's allegations, the court must inquire "whether the right was clearly established."  Id.  Summary judgment based on qualified immunity is appropriate if the law did not put the defendants on notice that their conduct would be clearly unlawful.  Id. at 202.

Because qualified immunity is an affirmative defense, the burden of proving the defense lies with the official asserting it.  Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).  Where the official moves for summary judgment on his qualified immunity defense, he bears the initial burden of establishing the absence of a genuine issue of fact on matters material to his affirmative defense.  Houghton, 965 F.2d at 1537.

In deciding whether the plaintiff's rights were clearly established at the time of an alleged use of excessive force, "[t]he proper inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law in [the relevant year] gave 'fair warning' to the officials that their conduct was unconstitutional."  Clement v. Gomez, 298 F.3d, 898, 906 (9th Cir. 2002) (citing Saucier, 533 U.S. at 202, and quoting Hope v. Pelzer, 536 U.S. 730, 746 (2002)).  This inquiry must be undertaken in light of the specific context of the case.  Saucier, 533 U.S. at 201.  Prison officials "'can still be on notice that their conduct violates established law even in novel factual circumstances.'"  Clement, 298 F.3d at 906 (quoting Hope, 536 U.S. at 741).

/////

## II. Discussion

The procedural history of this case demonstrates that plaintiff had adequate time for discovery. Defendants appeared in the action on September 9, 2003, and a discovery order was issued on September 12, 2003. The court's scheduling order permitted the parties to conduct discovery through September 3, 2004. Despite the fact that discovery had proceeded for a full year, the undersigned gave careful consideration to plaintiff's untimely motion to compel and his last-minute application to extend the pretrial motion deadline for the purpose of exploring possible amendments to his complaint. The undersigned determined that the discovery responses at issue were adequate, that plaintiff failed to show how any of the additional documents sought are relevant to the claims alleged against defendants Martin, Perry, and Ingwerson, and that plaintiff had not made the required showing of good cause for a modification of the scheduling order. In opposition to defendants' summary judgment motion, plaintiff has offered no additional information or argument that supports a Rule 56(f) continuance.

Defendants' evidence demonstrates that defendants Martin and Perry used only the force necessary to escort plaintiff from one facility to another within the institution and that the defendants did not act maliciously or sadistically for the purpose of causing plaintiff harm. Absent excessive force by either of these defendants, there was no need for defendant Ingwerson to intervene and no reason for her to lie in her report. The moving parties having met their initial responsibility, the burden has shifted to plaintiff to establish that a genuine issue as to any material fact does exist.

As the party who will bear the burden of proof at trial on each element of his claims, plaintiff may not rely upon the allegations of his pleadings but must tender evidence of specific facts in the form of declarations and/or admissible discovery material in support of any contention that a dispute exists. Plaintiff has not contended that any dispute exists with regard to defendants' statement of undisputed facts. Plaintiff has failed to make any showing that the force used was excessive or that any defendant acted maliciously or sadistically. No reasonable trier of

12

fact could find for plaintiff on the subjective element of his excessive force claim because there is no evidence that defendants applied force maliciously and sadistically.  If there was no use of excessive force, no reasonable trier of fact could find for plaintiff on his claims that defendant Ingwerson failed to intervene and lied in her report.  Plaintiff's complete failure of proof concerning these essential elements of his federal claims necessarily renders all other facts immaterial.

Summary judgment should be granted for all three defendants on plaintiff's federal claims.  The court should decline to exercise jurisdiction over any state law claims suggested by plaintiff's allegations.  See 28 U.S.C. § 1367(c).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' October 20, 2004 motion for summary judgment be granted; and

2. This action be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 22, 2005.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
batt0852.57